411 S.E.2d 865

The **COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR, Complainant,**

v.

**Randall L. VENERI, a Member of the West Virginia State Bar, Respondent.**

No. 20452.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 1991.

Decided Dec. 6, 1991.

Maria Marino Potter, West Virginia State Bar, Charleston, for complainant.

Wade T. Watson, Sanders, Watson & White, Bluefield, for respondent.

## PER CURIAM:

This is a disciplinary proceeding instituted by the Committee on Legal Ethics of the West Virginia State Bar against Randall L. Veneri, a member of the Bar. Because Mr. Veneri, in the administration of his mother's estate, represented conflicting interests in his roles as lawyer, executor and beneficiary, the Committee recommended that this Court suspend Mr. Veneri's license to practice law in this State for a period of three (3) months and require him to pay the costs of the proceeding. Because the charge was proven by clear and convincing evidence, we adopt the Committee's recommendation for discipline.

The complaint against Mr. Veneri arose from the administration of the estate of his mother, Mary Ella Veneri and was filed by Basil R. Legg, Jr., Mr. Veneri's brother-in-law. After several irreconcilable conflicts arose concerning the title to assets of his mother's estate, Mr. Veneri continued in the positions of lawyer, personal representative and beneficiary of his mother's estate. Mr. Veneri's continuation in his multiple roles after the conflicts had developed created a situation whereby Mr. Veneri's exercise of independent professional judgment on behalf of his client was likely to be adversely affected and, further, would likely involve Mr. Veneri in the representation of conflicting interests. The Committee concluded that Mr. Veneri's continuation in multiple roles that might affect his professional judgment, was a violation of the *Code of Professional Responsibility*,[1] in particular DR 5–105(A) and DR 1–102(A)(1), which provide:

A lawyer shall decline proffered employment if his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(c).

A lawyer shall not violate a Disciplinary Rule.

In his answer to the Committee's complaint, Mr. Veneri maintains that there was no conflict of interest because he did not act in the capacity of a lawyer in administrating his mother's estate and that no conflict existed because he was the personal representative of his mother and a beneficiary of her estate. However, because the evidence of a conflict of interest is preponderating and clear, we adopt the recommendation of the Committee.

### I

The conflict of interest resulting from Mr. Veneri's multiple roles in the administration of his mother's estate is shown in the dispute over the ownership of certain assets, namely some real property and a bank account. Although these are the major examples of the conflict of interest, Mr. Veneri's administration of his mother's estate produced disagreement, dissention and dispute among the children of Mrs. Veneri in other matters as well. The disputes began with questions concerning the drafting of Mrs. Veneri's will.

Mary Ella Veneri, the mother of Mr. Veneri, died testate September 9, 1986. Mrs. Veneri executed a will on August 9, 1984 and a codicil to her will on February 13, 1986 at the office of Mr. Veneri. Although Mr. Veneri denies preparing his mother's will, Mr. Veneri was the only lawyer then practicing in the office. A lawyer who had been practicing with Mr. Veneri apparently left the office at least one month before the execution of Mrs. Veneri's will. However, the lawyer who had practiced with Mr. Veneri and may have

1. The *Code of Professional Responsibility*, which was in effect when this action arose, was superseded and replaced by the *Rules of Professional Conduct* on January 1, 1989.

reviewed Mrs. Veneri's will was unable to testify before the Committee. The codicil to Mrs. Veneri's will was reviewed by Mr. Veneri and the will and codicil remained in open files in Mr. Veneri's office.

(A)

The identity of the scrivener of Mrs. Veneri's will is important in the conflict of interest concerning the ownership of certain real property. Mrs. Veneri's will contained a provision devising to Robin Veneri Legg, Mrs. Veneri's daughter and Mr. Veneri's sister, an "option to purchase [the decedent's] interest in a parcel of real estate located on Claytor Lake, Virginia." Although no comment was made concerning the option when the will was read to the entire family, when Mrs. Legg attempted to exercise the option, Mr. Veneri denied that his mother had any legal ownership in the Claytor Lake property.[2] Mr. Veneri acknowledged that his mother had contributed money for improvements but said that he and his brother, Robert, owned the Claytor Lake property.

When Mrs. Legg attempted to exercise the option to purchase her mother's interest in the property by submitting three five thousand dollar ($5,000) cashier's checks, Mr. Veneri wrote to his sister that he considered this a purchase of her mother's furnishings.[3] After Mr. Veneri denied that his mother had any legal ownership in the Claytor Lake property, Mrs. Legg instituted suit in Virginia. As of September 25, 1989, Mrs. Legg did not know the result of the Virginia litigation.

(B)

There was also a dispute over a bank account that Mrs. Veneri had titled jointly with Mrs. Legg. At the time of Mrs. Veneri's death, the balance in the joint bank account was about $37,000. According to Mr. Veneri, although he was aware that a rebuttable presumption exists making a joint bank account the property of the survivor, on the drive to the bank where the account was deposited, he said to Mrs. Legg, "Well, this account is there, there's some money in that account, I want to withdraw it for the estate." According to Mrs. Legg, when she refused to withdraw all of the account's money, Mr. Veneri said, "If you don't give me the money right now, you are drawing the line."

The Committee found that Mr. Veneri's attempts to discharge the dual roles of lawyer and executor in order to administer an estate in which he had a personal, financial interest led to situations in which he had a conflict of interest. The Committee did not find sufficient evidence to quarrel with Mr. Veneri's legal contention, vis-a-vis title to the real property or the joint bank account, but the committee found that Mr. Veneri was acting in an irreconcilable conflict when he assumed the positions of the lawyer, personal representative and beneficiary of his mother's estate. The Committee also noted that Mr. Veneri failed to recognize the conflict and refused voluntarily to remove himself from one of the conflicts even after the potential conflict was brought to his attention. Based on these findings, the Committee found a violation of DR 5–105(A) and DR 1–102(A)(1) of the *Code of Professional Responsibility* and recommended that Mr. Veneri's license to practice law be suspended for three months and that Mr. Veneri be required to pay the costs of the proceeding.

II

"The Disciplinary Rules of the Code of Professional Responsibility state the minimum level of conduct below which no lawyer can fall without being subject to

---

**2.** The Claytor Lake property consists of one building that has four apartments, one of which was furnished and used by Mrs. Veneri.

**3.** In a letter to Mrs. Legg dated December 1, 1986, Mr. Veneri wrote:
The real estate and improvements located at Claytor Lake, Dublin, Virginia, is now, and has always been, owned by Bob and myself and we have no intention of conveying an interest in it to you or anyone else. We have permitted the rest of the family to use the property out of our love and affection for them. You have apparently elected to buy Mother's furnishings and I will honor your election.

disciplinary action." Syllabus Point 3, *Committee on Legal Ethics v. Tatterson*, 173 W.Va. 613, 319 S.E.2d 381 (1984). The Committee On Legal Ethics of the State Bar has the burden of proving its charges against a lawyer by full, preponderating and clear evidence. In Syllabus Point 1, in part, *Committee on Legal Ethics v. Lewis*, 156 W.Va. 809, 197 S.E.2d 312 (1973), we stated:

> In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar ... the burden is on the Committee to prove, by full, preponderating and clear evidence, the charges contained in the complaint filed on behalf of the Committee.

*See Committee on Legal Ethics v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989); *Committee on Legal Ethics v. Thompson*, 177 W.Va. 752, 356 S.E.2d 623 (1987); *Committee on Legal Ethics v. Daniel*, 160 W.Va. 388, 235 S.E.2d 369 (1977); *Committee on Legal Ethics v. Pietranton*, 143 W.Va. 11, 99 S.E.2d 15 (1957).

From our review of the record, we find that the Committee met its burden of proving that Mr. Veneri violated DR 5–105(A) and DR 1–102(A)(1) of the *Code of Professional Responsibility* by failing to avoid an irreconcilable conflict of interest caused by his multiple roles of lawyer, personal representative and beneficiary of his mother's estate. In the matter of the option to purchase the real property, Mr. Veneri, as one of the real property's record title holders, disputed his mother's claim to title, a claim which she attempted to devise to Mrs. Legg by granting Mrs. Legg the option. In the matter of the joint bank account, Mr. Veneri, as executor of the estate, demanded funds, which he acknowledges as a lawyer exercising independent judgment are presumed to be the property of the survivor.

We also note that Mr. Veneri failed to recognize the existence of a conflict throughout the proceedings and refused to remove himself from any of his conflicting roles. The evidence that a conflict of interest existed because of the multiple roles Mr. Veneri played in the matter of his mother's estate, was preponderating and clear.[4]

In Syllabus Point 3, *In re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980), we said:

> Absent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the State Bar Ethics Committee ... are to be given substantial consideration.

*In accord* Syllabus Point 3, *Committee on Legal Ethics v. Smith*, 184 W.Va. 6, 399 S.E.2d 36 (1990); Syllabus Point 2, *Committee on Legal Ethics v. Harman*, 179 W.Va. 298, 367 S.E.2d 767 (1988).

After careful consideration of the evidence including Mr. Veneri's failure to recognize the existence of a conflict, we adopt the recommendation of the Committee that Mr. Veneri's license to practice law be suspended for three (3) months and that Mr. Veneri be required to pay the costs of the proceeding.

Accordingly, the Court suspends Mr. Veneri's license to practice law for three (3) months and orders him to pay the costs of the proceeding.

License suspended for three months and costs of proceeding.

---

**4.** The original complaint also charged Mr. Veneri with violation of the *Code of Professional Responsibility* arising from the preparation of Mrs. Veneri's will. We agree with the Committee's finding that the evidence did not clearly show that Mr. Veneri drafted or reviewed his mother's will or aided a non-lawyer in the unauthorized practice of law.