524 S.E.2d 900

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Randall L. VENERI, a member of The West Virginia State Bar, Respondent.**

No. 24221.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 1, 1999.

Decided Nov. 16, 1999.

Amie L. Johnson, Esq., Sherri D. Goodman, Esq., Lawyer Disciplinary Counsel

Charleston, West Virginia Attorneys for Complainant.

Lawrence E. Morhous, Esq., Bluefield, West Virginia, Attorney for Respondent.

PER CURIAM:

This disciplinary proceeding is before this Court upon a review of the March 31, 1999, Recommended Disposition of the Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("Board") concerning the respondent, Randall L. Veneri ("Veneri"), a member of the West Virginia State Bar. Veneri was charged with violating Rules 3.4(c) [1989][1] and 8.4(c) [1995][2] of the *Rules of Professional Conduct* for failing to file an asset disclosure form listing his client's two separate employee benefit plans during the course of his client's divorce. The Board recommends that the charges alleging violations of Rules 3.4(c) and 8.4(c) be dismissed. We accept the Board's findings and recommendations and dismiss those two charges.

Veneri was also charged with violating Rule 8.4(d) [1995] of the *Rules of Professional Conduct*[3] by engaging in conduct prejudicial to the administration of justice when he failed to inform the family law master or opposing counsel that a proposed Qualified Domestic Relations Order ["QDRO"] had been altered while in Veneri's office. The Board found that this charge was substantiated and that sanctions were warranted. The Board recommends that Veneri be suspended from the practice of law for 12 months, and that he be required to pay the costs of these proceedings.

Upon a thorough review of the record, we agree that the charge of professional misconduct in violation of Rule 8.4(d) [1995] was established by clear and convincing evidence. However, under the circumstances of this case, we find that an admonishment and the payment of costs are more appropriate penalties for Veneri.

I.

In 1976, Michele Montgomery and Gary Montgomery were married; the Montgomerys separated in December of 1989. At the time of the couple's separation, Mr. Montgomery worked for Pocohantas Land Company, a wholly-owned subsidiary of Norfolk Southern Corporation. Mr. Montgomery was a participant in two benefit plans through his employment. The first, the Retirement Plan of Norfolk Southern, was a defined benefit plan maintained solely by employer contributions, and payable either at the payee's retirement or the earliest retirement date. The second benefit plan was a tax deferred savings plan consisting of employee contributions that were matched by Norfolk Southern. This second benefit plan was established under Section 401(k) of the Internal Revenue Code and referred to as a Thrift and Investment Plan ("TIP").

Mr. Montgomery retained the respondent, Veneri, to represent Mr. Montgomery in his divorce; Mrs. Montgomery also retained separate counsel. The attorneys entered into negotiations concerning the Montgomerys' marital property, including Mr. Montgomery's retirement benefits. Apparently,

---

1. Rule 3.4(c) of the *Rules of Professional Conduct* provides in part:
   Rule 3.4. Fairness to opposing party and counsel.
   A lawyer shall not: . . .
   (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]

2. Rule 8.4(c) of the *Rules of Professional Conduct* provides in part:
   Rule 8.4. Misconduct.
   It is professional misconduct for a lawyer to:
   . . .

   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]
   Rule 8.4 of the *Rules of Professional Conduct* was amended in 1995. The amendment does not affect the particular sections applied in this case.

3. Rule 8.4(d) of the *Rules of Professional Conduct* provides:
   Rule 8.4. Misconduct.
   It is professional misconduct for a lawyer to:
   . . .
   (d) engage in conduct that is prejudicial to the administration of justice[.]

throughout the negotiations both parties and their counsel were under the mistaken impression that Mr. Montgomery had only one benefit plan.

On August 20, 1992, Mrs. Montgomery completed a Disclosure of Assets and Liabilities form as required by *W.Va.Code,* 48–2–33 [1993] wherein she indicated that she possessed no security, pension or profit-sharing plans other than an interest in a retirement plan belonging to Mr. Montgomery. On September 8, 1992, Veneri wrote a letter to Mrs. Montgomery's counsel and informing her counsel that Mr. Montgomery accepted the assets and liabilities listed by Mrs. Montgomery, and that Mr. Montgomery knew of no other asset or liability; consequently, Mr. Montgomery would not file a separate disclosure form.

At the final divorce hearing before a family law master the parties recited for the record the settlement agreement that they had reached concerning the parties' property. At the hearing, the parties demonstrated their belief that only one employee benefit plan existed. A recommended order was prepared by the family law master, and Mrs. Montgomery's attorney was instructed to draft the Qualified Domestic Relations Order ["QDRO"], which would control the division of Mr. Montgomery's pension benefits.[4]

The QDRO, as prepared by Mrs. Montgomery's attorney, provided for the division of the TIP benefit plan[5] and was forwarded to respondent Veneri for his inspection. Veneri turned the document over to the tax specialist at his law firm, his son, Anthony Veneri. Mr. Montgomery was also provided a copy of the proposed QDRO. Anthony Veneri was contacted by Mr. Montgomery, who stated that the proposed QDRO was incorrect. According to Mr. Montgomery, the

TIP plan was not to be divided. Anthony Veneri examined the order of the law master that provided for a division of "pension rights," but made no reference to a profit-sharing plan or TIP, and agreed with Mr. Montgomery. Without speaking to respondent Veneri about the matter, Anthony Veneri instructed his secretary to white-out the words "Thrift and Investment Plan" and type over them "Corporation Retirement Plan."

Anthony Veneri took the altered copy of the QDRO to respondent Veneri without alerting him to the change, obtained his signature, and returned the same to counsel for Mrs. Montgomery. The Board found that while it was common practice for a secretary at the Veneris' law offices to contact opposing counsel and inform them of a change in a proposed order, for some reason this was not done in this case. The altered QDRO was then forwarded to the family law master by Mrs. Montgomery's counsel for the law master's signature, and then Mrs. Montgomery's counsel sent a certified copy of the QDRO to Norfolk Southern Corporation.

Norfolk Southern Corporation returned the QDRO to Mrs. Montgomery's counsel, informing her that the proposed QDRO did not qualify because the benefit plan described was not properly defined. The letter further informed Mrs. Montgomery's attorney that there were in fact two separate benefit plans—not one.

Counsel for Mrs. Montgomery modified the QDRO, in accordance with the Norfolk Southern letter, to provide for the division of both·plans. This modified QDRO was sent to Veneri. Mr. Montgomery refused to sign the modified QDRO. Subsequently Mrs. Montgomery filed a contempt petition alleging that Mr. Montgomery had refused to carry out the obligations required under the Agreed Order.

[Emphasis added.]

---

**4.** The order of the family law master provided the following division:

... [Mrs. Montgomery] is awarded one half of all *pension rights* accruing to [Mr. Montgomery] through his employment with Norfolk and Southern Company through and including December 31, 1989 and shall forward to said employer a Qualified Domestic Relations Order (QDRO) dividing such *pension rights.*

**5.** The proposed QDRO contained the following language:

... This [QDRO] applies to the following qualified employee benefit plan: Norolk and Southern Corp. Thrift and Investment Plan, hereinafter referred to as "The Plan."

After a contempt hearing before the circuit court, the judge returned the case to the family law master for a determination of what was precisely meant by "pension rights," the language contained in the Agreed Order. It was the position of Mr. Montgomery that the TIP was to be awarded to him alone and that only the retirement plan was to be divided. From a review of the record it appears that there was still some confusion of exactly what type of benefit plans Mr. Montgomery had. The record does reflect that during negotiations the parties contemplated the division of "stocks;" nevertheless, Veneri argued before the family law master that the agreement was only for the regular retirement plan, and not the TIP—a stock plan.

No mention was made during the remanded proceedings before the family law master that the original QDRO had been altered at Veneri's law office. The family law master ruled that the TIP was marital property and that the TIP should be divided equally between the parties in addition to the retirement plan.

On December 16, 1993, the Circuit Court upheld the ruling of the family law master and the final order was entered. On June 12, 1995, Mrs. Montgomery [6] filed an ethics complaint against Veneri. After an investigation by the Board, Veneri was charged with failing to file an asset disclosure form listing Mr. Montgomery's two retirement plans as required by *W.Va.Code*, 48–2–33 [1993] in violation of Rules 3.4(c) and 8.4(c) of the *Rules of Professional Conduct*. Veneri was also charged with altering language in the QDRO and then failing to inform the family law master or opposing counsel of the alteration in violation of Rules 8.4(c) and 8.4(d) of the *Rules of Professional Conduct*.

A hearing was conducted before the Hearing Panel Subcommittee of the Board. Fol-

lowing the hearing, the Subcommittee filed its report, making findings of fact and conclusions of law. The Subcommittee found there was insufficient evidence to prove that Veneri knowingly disobeyed a known obligation of a tribunal (Rule 3.4(c)) or that he knowingly engaged in conduct involving fraud, deceit, dishonesty or misrepresentation (Rule 8.4(c)) when he failed to disclose Mr. Montgomery's two employee benefit plans.

The Subcommittee further found that there was insufficient evidence to prove that Veneri deliberately set out to deceive Mrs. Montgomery or her counsel by altering the QDRO in violation of Rule 8.4(c). However, the Subcommittee did find that there was sufficient evidence to prove that Veneri's conduct in connection with the alteration of the QDRO and his failure to advise opposing counsel or the family law master of the alteration, constituted a violation of Rule 8.4(d). See *supra*, note 3.

Based upon the report of the Subcommittee, the Board recommended to this Court that Veneri's license be suspended for 12 months and that he be required to pay the costs of the proceedings. Following the filing of Veneri's objection to the recommendation, this case was submitted to this Court for review.[7]

## II.

We apply a *de novo* standard of review when presented with a lawyer disciplinary matter.

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own

---

6. Mrs. Montgomery at some point changed her name to DeVane.

7. In addition to his objection to the Board's recommendation, Veneri also filed a motion to strike the written recommended disposition and

to dismiss the charges filed against him. Following a review of the motion and briefs submitted by both parties, this Court refused to grant the motion.

independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syllabus Point 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994). *See also* Syllabus Point 2, *Lawyer Disciplinary Board v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995); Syllabus Point 3, *Lawyer Disciplinary Board v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995).

■ At the outset we recognize that situations exist when an attorney may be held responsible for the actions of others. Rule 5.1 [1989] of the *Rules of Professional Conduct* outlines certain situations in which a partner or supervisory lawyer may be held responsible for the actions of another attorney or employee of the firm. Rule 5.1(c) of the *Rules of Professional Conduct* provides in pertinent part:

> (c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:
>
> (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
>
> (2) the lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

■ Veneri is a partner in his law firm and was the supervising attorney over the tax specialist, Anthony Veneri, in the Montgomery divorce. Following its investigation, the Board determined that respondent Veneri had no actual knowledge of the specific conduct and did not ratify the conduct of Anthony Veneri prior to the hearing before the family law master. However, the Board did find that respondent Veneri was responsible nevertheless for Anthony Veneri's conduct because the respondent was both the supervising attorney and a partner. The Board determined that due to his position, Veneri was required under Rule 5.1(c)(2) to take remedial action so as not to prejudice the administration of justice.

There can be no question that the alteration of a proposed order without notice to opposing counsel is improper. Rule 4.1 [1989] of the *Rules of Professional Conduct* provides:

> In the course of representing a client a lawyer shall not knowingly:
>
> (a) make a false statement of material fact or law to a third person[.]

Veneri argued before the Board that the alteration of the QDRO was technically correct. Veneri's argument does not excuse his failing to notify opposing counsel of the alteration, failing to notify the law master of the alteration, or excuse his conduct when he argued that the parties had never agreed to divide Mr. Montgomery's stock plan.

We consequently find by clear and convincing evidence that Veneri violated Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice.

■ Having made the determination that Veneri violated Rule 8.4, we must now determine an appropriate disciplinary sanction. "This Court reviews *de novo* questions of law and the appropriateness of a particular sanction." *McCorkle,* 192 W.Va. at 289, 452 S.E.2d at 380. The law is well established that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.E.2d 783 (1985).

■ While we are assisted by the Board's recommendation of discipline, we must examine each case individually and provide appropriate discipline. In our efforts to determine a proper sanction we must "consider not only what steps would appropriate-

ly punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar[.]". Syllabus Point 3, in part, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). We have further stated that:

> "In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances [in each case], including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action." Syl. pt. 2, *Committee on Legal Ethics v. Mullins*, 159 W.Va. 647, 226 S.E.2d 427 (1976).

Syllabus Point 2, *Committee on Legal Ethics v. Higinbotham*, 176 W.Va. 186, 342 S.E.2d 152 (1986).

We are also assisted in our determination by Rule 3.16 of the *Rules of Lawyer Disciplinary Procedure* which provides:

> In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

In addition to the above factors we have also held that "prior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust." Syllabus Point 5, *Committee on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986).

We recognize that this is not the first time Veneri has had to address disciplinary charges.[8] However, an examination of the previous disciplinary matter and the one now before this Court reveals no similarities between the two separate incidents. The previous discipline matter concerned the administration of Veneri's mother's estate and Veneri's conduct with his sister. The matter now before us is quite dissimilar.

Applying the remaining factors set forth in Rule 3.16. of the *Rules of Lawyer Disciplinary Procedure*, we find the Board's recommended punishment to be harsh. According to the record, neither of the parties knew that there were two employee benefit plans and it would appear that the actions and omissions of Veneri did not prejudice the rights of Mrs. Montgomery. Consequently, we find the Board's recommendation of a year's suspension to be extreme.

Accordingly, we find that Veneri should be admonished and be required to pay the costs of these proceedings.

Admonishment and Costs.

Judge RISOVICH, sitting by special assignment.

Justice SCOTT did not participate in the decision of the Court.

---

**8.** *Committee on Legal Ethics v. Veneri*, 186 W.Va. 210, 411 S.E.2d 865 (1991).