734 S.E.2d 737

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner**

v.

**John W. ALDERMAN, III, Respondent.**

No. 35705.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 5, 2012.

Decided Oct. 19, 2012.

Rachael L. Fletcher Cipoletti, Chief Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, WV, for Petitioner.

Ancil G. Ramey, Steptoe & Johnson PLLC, Huntington, WV, for Respondent.

PER CURIAM:

This lawyer disciplinary proceeding against John W. Alderman, III, (hereinafter "Mr. Alderman") was initiated by the Lawyer Disciplinary Board's (hereinafter "Board") Investigative Panel and filed with this Court by the Office of Disciplinary Counsel (hereinafter "ODC") on October 15, 2010. Following an evidentiary hearing, the Hearing Panel Subcommittee adopted a joint

recommendation on December 27, 2011, finding that the charges against Mr. Alderman were supported by the evidence and recommending that Mr. Alderman's license to practice law be suspended for one year, in addition to other sanctions. On February 9, 2012, this Court directed that the matter be scheduled for oral argument, with briefs to be submitted by the parties in support of their respective positions. Upon thorough review of the briefs, the record, oral argument, and applicable precedent, this Court accepts the resolution and recommended sanctions of the Board.

## I. Factual and Procedural History

Mr. Alderman was admitted to the West Virginia State Bar in 1993 and has worked as an attorney in a law firm and as general counsel for City National Bank. In 1994, Mr. Alderman began experiencing severe neck and chest pain due to complications from nerve damage to his throat and chest suffered during a biopsy of his lymph nodes. Due to this pain, Mr. Alderman underwent a surgical procedure and began taking prescription pain medications. He eventually became addicted to oxycontin and ultimately sought treatment for addiction to prescription medications.

In June 2009, Mr. Alderman was charged with possession with intent to deliver and misdemeanor possession of 2.6 grams of cocaine. He pled guilty to the misdemeanor charge and received a ninety-day suspended sentence and unsupervised probation for one year. Although he participated in a drug rehabilitation program in Virginia, he relapsed and continued to struggle with drug addiction.

From June 3, 2009, to October 1, 2010, Mr. Alderman voluntarily ceased the practice of law and continued to undergo treatment for drug addiction. During that time, on September 1, 2009, Mr. Alderman was charged with possession of a controlled substance, obstructing an officer, failure to stop at a traffic control signal, and defective equipment. A search of his vehicle at that time revealed smoking pipes and the prescription drug, Xanax. Mr. Alderman was incarcerated for five days and received a thirty-day suspended sentence and unsupervised probation for one year.

Mr. Alderman voluntarily admitted himself into Cumberland Heights Traditional Adult/Professional Program in Nashville, Tennessee, on September 6, 2009, for a ninety-day drug addiction program. He thereafter participated in an outpatient treatment regimen and remained in Nashville for a total period of approximately six months.

On October 15, 2010, the ODC filed a petition seeking annulment of Mr. Alderman's license to practice law, citing violations of Rules 8.4(b), 8.4(c) and 8.4(d) of the Rules of Professional Conduct[1] based upon Mr. Alderman's two misdemeanor criminal convictions. A mitigation hearing was held on June 28, 2011. Multiple witnesses, including area businessmen, other attorneys, Mr. Alderman's wife, a drug abuse counselor, and a police officer, testified that Mr. Alderman had been drug free since 2009, had not caused harm to any clients, and had been extremely helpful to other individuals suffering from addictions.

A joint recommendation was thereafter issued by the ODC and Mr. Alderman. Pursuant to that recommendation, Mr. Alderman would receive the following sanctions: (1) suspension from the practice of law for two years, one served retroactively based on his voluntary withdrawal from legal practice[2] and one held in abeyance pending[3] two years

---

1. Rule 8.4 of the Rules of Professional Conduct provides, in pertinent part, as follows:
It is professional misconduct for a lawyer to:
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

2. Although Mr. Alderman voluntarily removed himself from the practice of law from June 3, 2009, to October 1, 2010, the months of June to September 2009 are not used in calculating the retroactive suspension because Mr. Alderman was either in an in-patient rehabilitation center or again using illegal drugs during that period.

3. Upon successful completion of the conditions of supervised practice, the additional year of suspension would be rescinded.

of supervised practice; (2) required daily attendance of twelve-step program meetings with proof in writing; (3) required regular counseling sessions for two years; (4) required service to the Lawyers Assistance Committee for thirty hours of service over two years; (5) random drug screening on two-hour notice for two years; (6) reimbursement to the ODC for costs; and (7) potential one year suspension if Mr. Alderman commits a substantial violation of these terms and conditions during his supervised practice.

On February 9, 2012, this Court directed that the matter be scheduled for oral argument before this Court. That oral argument occurred on September 5, 2012.

## II. Standard of Review

■ The standard of review utilized by this Court in the evaluation of lawyer disciplinary proceedings was set forth in syllabus point three of *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), as follows:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*Accord* Syl. Pt. 3, *Lawyer Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995). This Court has also explained that it "is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984). Based upon these standards, this Court evaluates the recommendations regarding appropriate sanctions for Mr. Alderman.

## III. Discussion

■ Syllabus point four of *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998), instructs as follows:

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

*See also* Syl. Pt. 3, *Lawyer Disciplinary Board v. Keenan,* 208 W.Va. 645, 542 S.E.2d 466 (2000); Syl. Pt. 4, *Lawyer Disciplinary Board v. Battistelli,* 206 W.Va. 197, 523 S.E.2d 257 (1999).

■ In this Court's examination of whether Mr. Alderman violated a duty owed to a client, the public, the legal system, or the profession, this Court finds an adequate basis to support the ODC's conclusion that such a violation was committed. Under the disciplinary rules, the ODC must prove its case by clear and convincing evidence. *See* Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995) ("Rule 3.7 of the Rules of Lawyer Disciplinary Procedure ... requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence."). In syllabus point two of *Committee on Legal Ethics v. Six,* 181 W.Va. 52, 380 S.E.2d 219 (1989), this Court held as follows: "Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical

violation arising from such conviction." Mr. Alderman does not dispute that he was properly charged with illegal drug violations and that he pled guilty to two misdemeanor crimes that adversely reflect upon his honesty, trustworthiness, and fitness as an attorney.

Mr. Alderman's criminal acts did not, however, have any deleterious effect upon his representation of clients in his legal practice. During the mitigation hearing, extensive testimony indicated that Mr. Alderman engaged in substantial effort to prevent his drug addiction from adversely affecting any client cases and, in fact, voluntarily disengaged himself from the practice of law from June 3, 2009, to October 1, 2010.

■ In addressing the existence of mitigating factors in *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003), this Court explained that mitigating factors are "any considerations or factors that may justify a reduction in the degree of discipline to be imposed." This Court also explained as follows in syllabus point three of *Scott*:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

■ Applying these factors to the present case, this Court finds that the ODC properly identified a myriad of mitigating factors in the circumstances of this case. Mr. Alderman voluntarily and repeatedly sought treatment for his addiction to illegal drugs, including both inpatient and outpatient treatment.

Subsequent to his September 2009 arrest, he transferred control of his family's finances to his wife, and he also consulted with a member of the Lawyers Assistance Committee while he remained incarcerated. Mr. Alderman completed a ninety-day inpatient treatment program in Nashville, Tennessee, as well as an outpatient treatment program provided by that facility. Additionally, extensive testimony was presented regarding Mr. Alderman's commitment to the addiction treatment program and his assistance to multiple other individuals dealing with similar addictions. Testimony was also elicited from Mr. Alderman's clients regarding his provision of excellent legal assistance to them. Moreover, Mr. Alderman has maintained sobriety since 2009 and has cooperated in every facet of the ODC's investigation of this case.

As emphasized by the ODC, the sanctions recommended in this matter are consistent with sanctions imposed upon other attorneys for comparable drug-related and other violations. In *Office of Lawyer Disciplinary Counsel v. Galford*, 202 W.Va. 587, 505 S.E.2d 650 (1998), for instance, the respondent was suspended for one year based on his plea of *nolo contendre* to a charge of conspiracy to commit a misdemeanor forgery of a client's will. A public reprimand and supervised practice for two years were imposed as sanctions in *Lawyer Disciplinary Board v. Roberts*, 217 W.Va. 189, 617 S.E.2d 539 (2005). Ms. Roberts had engaged in significant acts of misconduct in representing her client during a period of time in which she underwent medical treatment for pain. *See also Lawyer Disciplinary Board v. Dues*, 218 W.Va. 104, 624 S.E.2d 125 (2005) (public reprimand and work restriction based upon mental impairment and thirty-nine violations involving clients); *Office of Lawyer Disciplinary Counsel v. Albers*, 214 W.Va. 11, 585 S.E.2d 11 (2003) (five-month suspension for assault, larceny, and harassment); *Committee on Legal Ethics v. Taylor*, 187 W.Va. 39, 415 S.E.2d 280 (1992) (public reprimand for writing worthless checks); *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989) (three-year suspension for six counts of misdemeanor possession of cocaine); *Committee on Legal Eth-*

*ics v. Harman,* 179 W.Va. 298, 367 S.E.2d 767 (1988) (public reprimand and costs for delivery of marijuana to a client); *Committee on Legal Ethics v. Higinbotham,* 176 W.Va. 186, 342 S.E.2d 152 (1986) (six-month suspension for failure to file income tax returns).

Retroactive applications of suspensions from the practice of law have also been utilized by the ODC. In *Committee on Legal Ethics v. White,* 189 W.Va. 135, 428 S.E.2d 556 (1993), for instance, the respondent prosecutor was suspended for two years based upon his plea to three federal misdemeanor charges for possession of cocaine, marijuana, and percocet. This Court permitted the suspension to be applied retroactively to the date on which Mr. White voluntarily withdrew from the practice of law in order to engage in rehabilitation. In evaluating the disciplinary sanctions appropriate in Mr. White's situation, this Court stated as follows:

> In considering the appropriate disciplinary action to be taken against Mr. White, we must balance the seriousness of his unethical and illegal conduct while holding public office with his cooperation with both the federal authorities and the Committee and his contrition and acknowledgment of his wrongdoing. We believe the two-year suspension, retroactive to January 2, 1992 (the date Mr. White voluntarily placed himself on inactive status with the State Bar), recommended by the Committee, appropriately accounts for both the seriousness of Mr. White's crimes while he occupied a position of public trust, and the mitigating facts and circumstances of his later behavior.

189 W.Va. at 139, 428 S.E.2d at 560.[4]

This Court has previously explained that it will consider the facts and circumstances in each individual case involving a determination of disciplinary action, rather than attempting to establish a uniform standard of disciplinary action. *See Lawyer Disciplinary Bd. v. Veneri,* 206 W.Va. 384, 524 S.E.2d 900 (1999).

## IV. Conclusion

This Court has conducted a thorough review of the record in this matter and concludes that the findings and recommendations of the ODC are supported by reliable, probative and substantial evidence. For the foregoing reasons, the recommendations of the ODC are adopted, and Mr. Alderman is sanctioned as follows: (1) suspension from the practice of law for two years, one served retroactively based on his voluntary withdrawal from legal practice and one held in abeyance pending[5] two years of supervised practice; (2) required daily attendance of twelve-step program meetings with proof in writing; (3) required regular counseling sessions for two years; (4) required service to the Lawyers Assistance Committee for thirty hours of service over two years; (5) random drug screening on two-hour notice for two years; (6) reimbursement to the ODC for costs; and (7) potential one year suspension if Mr. Alderman commits a substantial violation of these terms and conditions during his supervised practice.

Recommended Sanctions Approved

---

**4.** As noted above, Mr. Alderman is not receiving a benefit from the entire fifteen-month period in which he removed himself from the practice of law. Only the twelve-month period after his second arrest is being credited toward his retroactive suspension.

**5.** As explained above, upon successful completion of the conditions of supervised practice, the additional year of suspension would be rescinded.