# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 17-0906

_____

FILED

**June 3, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LAWYER DISCIPLINARY BOARD,**
Petitioner

v.

**JENNIFER M. WOLFE,
A MEMBER OF THE WEST VIRGINIA STATE BAR,**
Respondent

_____

Lawyer Disciplinary Proceeding
I. D. No. 16-03-311

LAW LICENSE SUSPENDED AND OTHER SANCTIONS

_____

Submitted: April 23, 2019
Filed: May 31, 2019

Jessica H. Donahue Rhodes, Esq.
Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Counsel for the Petitioner

J. Michael Benninger, Esq.
Benninger Law, PLLC
Morgantown, West Virginia
Counsel for the Respondent

**JUSTICE ARMSTEAD delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative and substantial evidence on the whole record." Syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

2. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

**Armstead, Justice**:

This case is before this Court upon the report and recommendations of the Hearing Panel Subcommittee of the Lawyer Disciplinary Board regarding the license to practice law of Jennifer M. Wolfe ("Wolfe"). Ms. Wolfe was admitted to the Bar in 2014 and is subject to the disciplinary jurisdiction of this Court.

The Hearing Panel Subcommittee found that Wolfe committed violations of the West Virginia Rules of Professional Conduct which resulted from her acknowledged drug abuse and dependency. Wolfe formally disengaged from the active practice of law on October 22, 2018.[1] The recommendations of the Hearing Panel Subcommittee include the suspension of Wolfe's license to practice law for one year and six months and her mandatory participation in the evaluation and treatment protocols established by the West Virginia Judicial and Lawyer Assistance Program. The Office of Disciplinary Counsel consents to the recommendations. Wolfe asks that her suspension be limited to six months.

---

[1] During oral argument, this Court asked Wolfe for verification of her disengagement from the active practice of law. Soon after, Wolfe provided a written supplement to the record which states in part:

> By Order Granting Motion to Withdraw as Counsel, entered October 22, 2018, by the Family Court of Wood County, West Virginia, [Wolfe] was permitted to withdraw as counsel of record for her client, thereby completing the client representation and concluding her active practice of law as of that date.

1

Upon review, this Court confirms the findings and conclusion set forth in the report of the Hearing Panel Subcommittee, and we adopt the Subcommittee's recommendations in their entirety. This Court holds, however, that the one year and six month suspension of Wolfe's license to practice law shall be retroactive to October 22, 2018, the date Wolfe formally disengaged from the active practice of law.

## I. Factual and Procedural Background

On October 12, 2017, the Investigative Panel of the Lawyer Disciplinary Board filed a Statement of Charges formally charging Wolfe with violations of the Rules of Professional Conduct. The Statement of Charges referred to the following occurrences:

On June 13, 2016, local police officers executed a search warrant of Wolfe's Jackson County residence in search of Jack Greene, a fugitive from justice. Wolfe, outside the residence when the police arrived, stated that Greene was not in the residence, that she had not seen him, and that she did not know where he was. The police entered the residence, found Greene in the bedroom and placed him under arrest. A handgun was observed on the nightstand by the bed. The police found drug paraphernalia in the residence, along with a white, crystal substance believed to be crystal methamphetamine. According to the Statement of Charges, Wolfe's two year old child was present at that time.

2

As a result of the June 13, 2016, incident, Wolfe was charged in the Magistrate Court of Jackson County with the misdemeanor offenses of possession of a controlled substance and obstructing an officer and the felony offense of child neglect creating risk of injury.[2] In March 2017, the controlled substance and obstructing an officer charges were resolved through Wolfe's entry into a pretrial diversion program. The child neglect creating risk of injury charge was bound over to the Circuit Court of Jackson County but dismissed *nolle prosequi* by order entered on June 22, 2017.

The Statement of Charges further alleged that, during a urine drug screen conducted on July 5, 2016, a tube containing liquid was observed taped to Wolfe's body. According to the police report, Wolfe stated that she had worn the tube to pass the drug screen but decided to be honest and abandoned the plan. During the screen, Wolfe urinated as required. Both liquids, however, field-tested positive for controlled substances (amphetamines and methamphetamine). The resulting criminal charge was also resolved through pretrial diversion. Finally, the Statement of Charges alleged that Wolfe wrote a

---

[2] Separate criminal complaints were filed charging the three offenses. The criminal complaint for possession of a controlled substance was designated "misdemeanor" and cited *W.Va. Code*, 60A-4-401 [2011], which sets forth prohibited acts under the West Virginia Uniform Controlled Substances Act. The criminal complaint for obstructing an officer was also designated "misdemeanor" and cited *W.Va. Code*, 61-5-17 [2014], which addresses obstructing an officer, making false statements to an officer, *etc*. The criminal complaint for child neglect creaking risk of injury was designated "felony" and cited *W.Va. Code*, 61-8D-4 [2014], which addresses penalties for various forms of child neglect.

worthless check on May 8, 2016, payable to Foodfair in the amount of $148.48. Denying intentional misconduct, Wolfe maintained that she wrote the check on an account which had been closed by the bank without her knowledge. Wolfe entered a no contest plea to the charge and was assessed a fine, costs and restitution.[3]

Wolfe self-reported to the Office of Disciplinary Counsel that she had been charged with possession of a controlled substance, obstructing an officer and child neglect creating risk of injury. Upon inquiry, the Investigative Panel found probable cause to charge Wolfe in the October 12, 2017, Statement of Charges with a violation of Rule 8.4.(b) of the Rules of Professional Conduct. Rule 8.4.(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The violation of Rule 8.4.(b) was based on the Investigative Panel's conclusion that Wolfe possessed a controlled substance and obstructed an officer, and that she attempted to defeat the drug screen and wrote a worthless check.

In addition, based on Wolfe's attempt to defeat the drug screen and writing a worthless check, the Investigative Panel found probable cause to charge Wolfe with a

---

[3] The criminal complaint regarding Wolfe's drug screen was designated "misdemeanor" and cited *W.Va. Code*, 60A-4-412 [2007], which addresses attempts to defeat a drug or alcohol screening test. The criminal complaint concerning the worthless check cited *W.Va. Code*, 61-3-39a [2007], which addresses the misdemeanor offense of making or issuing a worthless check with respect to a preexisting debt.

violation of Rule 8.4.(c) which states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

An evidentiary hearing was conducted before the Hearing Panel Subcommittee in April 2018, and on September 11, 2018, the Subcommittee filed its report and recommendations in this Court. The Hearing Panel Subcommittee found by clear and convincing evidence that Wolfe was guilty of (1) possession of a controlled substance in violation of *W.Va. Code*, 60A-4-401 [2011], (2) attempting to defeat a drug and alcohol screening test in violation of *W.Va. Code*, 60A-4-412 [2007], and (3) writing a worthless check in violation of *W.Va. Code*, 61-3-39a [2007].[4] Consequently, the Hearing Panel Subcommittee concluded that Wolfe violated Rule 8.4.(b) of the West Virginia Rules of Professional Conduct. Based on the drug screen and worthless check violations, the Subcommittee also concluded that Wolfe violated Rule 8.4.(c).

As a result of Wolfe's violations of the Rules of Professional Conduct, the Hearing Panel Subcommittee recommends that this Court adopt the following sanctions regarding Ms. Wolfe's license to practice law:

---

[4] Neither the charge of child neglect creating risk of injury, which had been dismissed, nor the charge of obstructing an officer, regarding which no evidence had been presented before the Hearing Panel Subcommittee, were part of the Subcommittee's report and recommendations to this Court.

5

a.      That [Wolfe's] law license be suspended for a period of one year and six months;

b.      That [Wolfe] shall participate in the evaluation and treatment protocol as established by the JLAP [West Virginia Judicial and Lawyer Assistance Program];

c.      That [Wolfe] must comply with the mandates of Rule 3.28. of the Rules of Lawyer Disciplinary Procedure; and

d.      [That Wolfe] be ordered to pay the costs of these proceedings pursuant to Rule 3.15. of the Rules of Lawyer Disciplinary Procedure.[5]

## II. Standards of Review

The standards of review in lawyer disciplinary cases are well settled.  In syllabus point 3 of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), this Court held:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative and substantial evidence on the whole record.

---

[5] Rule 3.28. provides, *inter alia*, that a suspended lawyer shall notify clients of his or her inability to act as a lawyer.  Rule 3.15. authorizes the Hearing Panel Subcommittee, or this Court, to order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary hearing.

*Accord*, syl. pt. 1, *Lawyer Disciplinary Board v. Haught*, 233 W.Va. 185, 757 S.E.2d 609 (2014); syl. pt. 1, *Lawyer Disciplinary Board v. Santa Barbara*, 229 W.Va. 344, 729 S.E.2d 179 (2012).

In addition, syllabus point 3 of *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028 (1985), makes clear: "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Finally, we note that Rule 3.7. of the West Virginia Rules of Lawyer Disciplinary Procedure provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence."

With those standards in mind, we review the findings, conclusions and recommendations of the Hearing Panel Subcommittee.

## III. Discussion

The record before this Court sets forth the testimony of nine witnesses, including Ms. Wolfe, who appeared before the Hearing Panel Subcommittee during the April 2018 hearing. The record also includes other transcripts, four volumes of exhibits and supplementary matters. Applying our *de novo* review of the record thus submitted, this Court concludes that clear and convincing evidence demonstrates that Wolfe violated Rule

7

8.4.(b) and Rule 8.4.(c) of the Rules of Professional Conduct by (1) the illegal possession and use of controlled substances, (2) attempting to defeat the drug screen and (3) writing the worthless check. The violations were shown largely through Wolfe's admissions and self-reporting to the Lawyer Disciplinary Board. The remaining issue, therefore, concerns the Hearing Panel Subcommittee's recommended sanctions.

Rule 3.15. of the Rules of Lawyer Disciplinary Procedure lists the following sanctions which may be recommended to this Court by the Hearing Panel Subcommittee regarding a violation of the Rules of Professional Conduct: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. In deciding which sanctions are appropriate, Rule 3.16. provides that the following shall be considered:

> (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

*See*, syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998) (tracking the language of Rule 3.16.).

With regard to aggravating or mitigating factors under Rule 3.16., this Court stated in syllabus point 4 of *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003): "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." In comparison, this Court stated in syllabus point 2 of *Scott* that mitigating factors in a lawyer disciplinary proceeding "are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Accord*, syl. pts. 5, 6, *Lawyer Disciplinary Board v. Martin*, 225 W.Va. 387, 693 S.E.2d 461 (2010).

The report of the Hearing Panel Subcommittee shows that all four components of Rule 3.16. were considered with respect to Wolfe's violation of Rules 8.4.(b) and 8.4.(c) of the Rules of Professional Conduct. The report states that clear and convincing evidence established that Wolfe violated her duties to the public, the legal system, and the legal profession "by illegally possessing drugs, writing a worthless check and attempting to defeat a drug screen." The report found that Wolfe's conduct in writing the worthless check was negligent, but that her possession and use of illegal drugs, as well as her attempt to defeat the drug screen, were intentional. Nevertheless, the report determined that the amount of the actual injury caused by Wolfe's misconduct was moderate: "While the legal system and the legal profession were injured by [Wolfe's] misconduct, there is no evidence that any of [Wolfe's] clients suffered direct harm. The people most hurt by [Wolfe's] conduct are her and her family."

9

The Hearing Panel Subcommittee also considered the presence of aggravating and mitigating factors. The Subcommittee found one aggravating factor: Wolfe's "illegal conduct which involved the use of controlled substances."[6] Two mitigating factors were found: (1) the absence of a prior disciplinary record and (2) Wolfe's inexperience in the practice of law.

Finally, the Hearing Panel Subcommittee noted in its report that Wolfe has entered into a substance abuse recovery plan through the West Virginia Judicial and Lawyer Assistance Program. The report further noted the testimony of the Program's Executive Director, Robert E. Albury, Jr., who indicated that Wolfe should not be considered for a return to the practice of law until she has completed a full year of treatment, recovery and evaluation. The report also stated that Wolfe exhibited a level of defensiveness regarding her history of drug abuse. Commending Wolfe for her recovery to date, but concluding that Wolfe should be removed from the practice of law for a period of time, the Hearing Panel Subcommittee concluded that the recommended sanctions should include a suspension for a period of one year and six months. The Subcommittee determined that the suspension time-frame would fall in line with the time Wolfe would need for treatment, recovery and evaluation through the Assistance Program.

---

[6] The Hearing Panel Subcommittee stated in its report: "While [Wolfe] used heroin and cocaine in her past, the recent charge for possession of a controlled substance involved methamphetamine, which is also an illegal drug."

After the filing of the Subcommittee's report and recommendations, a supplement to the record was filed which confirms that on May 15, 2018, Wolfe entered into a Monitoring Agreement with the Judicial and Lawyer Assistance Program for a period of five years. Attached to the supplement was a letter to Wolfe's counsel dated April 25, 2019, from Executive Director Albury which states in part:

> Ms. Wolfe has remained compliant in all monitoring requirements. All random and alcohol and drug screens have been negative. Further, Ms. Wolfe's behavior has been and remains indicative of a person who is committed to working a personal program of recovery, and she has earned WVJLAP advocacy.[7]

In *Office of Disciplinary Counsel v. Alderman*, 229 W.Va. 656, 734 S.E.2d 737 (2012), the Office of Disciplinary Counsel filed a petition against an attorney for violations of the Rules of Professional Conduct, including Rules 8.4.(b) and 8.4.(c). Initially taking prescription pain medication following surgery, the attorney became addicted to controlled substances which resulted in two misdemeanor convictions. In 2009, the attorney

---

[7] Executive Director Albury indicated that Wolfe should not be considered for a return to practice until she has completed a full year of treatment, recovery and evaluation. At this point, Wolfe has already been under the May 15, 2018, Monitoring Agreement for over one year and will remain subject to the Agreement until May 2023. Director Albury's April 2019 letter states that Wolfe has been compliant with monitoring requirements, exhibited negative alcohol and drug screens, and has been committed to her recovery. Based on a retroactive suspension from practice beginning on October 22, 2018, when Wolfe disengaged from the practice of law, Wolfe will not be eligible for reinstatement until 2020. As the Hearing Panel Subcommittee recommended, Wolfe's suspension timeframe, therefore, falls in line with her recovery Agreement with the Judicial and Lawyer Assistance Program.

voluntarily ceased practicing law and engaged in treatment for his addiction. The evidence indicated that the attorney became drug free, had not caused harm to any clients and had been helpful to other individuals suffering from addiction.

In *Alderman*, the Office of Disciplinary Counsel and the attorney reached a joint recommendation the provisions of which included the attorney's suspension from practice for two years, with one served retroactively based on the attorney's voluntary withdrawal from practicing law. The second year of suspension would be held in abeyance pending compliance with supervised practice, random drug screening, treatment and counseling services and reimbursement of costs.

The joint recommendation in *Alderman* was accepted by the Hearing Panel Subcommittee and adopted by this Court. Determining that the findings and recommendation were supported by the evidence, this Court noted, in *Alderman*, that the attorney had repeatedly sought treatment for his addiction, had provided excellent legal services to his clients, had maintained sobriety, and had cooperated with the investigation conducted by the Office of Disciplinary Counsel. Finally, this Court observed, in *Alderman*, that the recommended sanctions were consistent with sanctions imposed upon other attorneys for comparable drug-related and other violations and that retroactive applications of suspensions from the practice of law have been utilized in the past. 229 W.Va. at 660, 661, 734 S.E.2d at 741, 742.

The disciplinary proceeding in *Lawyer Disciplinary Board v. Hanna*, no. 16-0178 (W.Va. Aug. 30, 2016) (unpublished order), also concerned an attorney addicted to controlled substances. In *Hanna*, the attorney used illegal substances while employed as a public defender and was terminated from her employment. The attorney admitted that she had twice overdosed on heroin. On January 20, 2016, this Court, in *Hanna*, entered an order upon the petition of disciplinary counsel suspending the attorney pending completion of the underlying disciplinary proceedings.[8]

As in the current matter, as well as in *Alderman*, the transgressions alleged against the attorney in *Hanna* included a violation of Rule 8.4.(b) concerning criminal acts that reflect adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer. The Hearing Panel Subcommittee found, however, that the attorney sought treatment for her addiction at a respected facility and had maintained her sobriety. Moreover, the Hearing Panel Subcommittee in *Hanna* noted that there was no evidence that the attorney had impacted a specific client by her conduct.

---

[8] *See* Rule 3.27. of the Rules of Lawyer Disciplinary Procedure authorizing an interim suspension from the practice of law pending further disciplinary proceedings. *See also* Rule 3.23. authorizing an administrative suspension from practice until further order, based on "mental infirmity or illness or because of addiction to drugs or alcohol."

This Court, in *Hanna*, entered an order on August 30, 2016, suspending the attorney from the practice of law for one year, retroactive to January 20, 2016 (the date of her interim suspension). Additional sanctions included compliance with drug screening, treatment and counseling services and reimbursement of costs.

In the case at bar, Ms. Wolfe admitted to a long history of drug abuse beginning at age sixteen. She testified, however, that an intervening incident of domestic violence, which occurred in 2014 just after her admission to practice, propelled her into a deeper level of addiction. Testimony reveals that Wolfe was beaten by an individual by the name of Ty Hill and sustained a broken collarbone and a dislocated shoulder. According to Wolfe, her prescribed pain medication was directly contributory to her spiral into a heavier level of drug abuse.

However, Wolfe maintains that, in 2016, shortly after the criminal charges were filed against her, she participated in treatment programs for drug abuse and has remained drug free. The answer filed by Wolfe's counsel to the Statement of Charges averred that Wolfe "has been in active treatment for her drug use and dependency since July 26, 2016, and she is sober and has not used any prescription narcotics or illicit substances, including methamphetamine, with the exception of suboxone prescribed by her medical care

14

providers since that date."[9]  Nevertheless, until Wolfe reached out to the Judicial and Lawyer Assistance Program during these disciplinary proceedings, she did not have a consistent, ongoing treatment plan to help her deal with her addiction issues.

Currently, Ms. Wolfe is subject to the five year Monitoring Agreement with the Judicial and Lawyer Assistance Program.  She has been compliant with the Agreement and has earned the advocacy of the JLAP.  Nevertheless, the record demonstrates that Wolfe should remain removed from the practice of law for a period in time while she continues to make progress on her recovery.  The Hearing Panel Subcommittee recommends a suspension of one year and six months.

This Court held in syllabus point 3 of *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987):

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

---

[9] Suboxone is an "opiate medication that is used to treat narcotic addiction." *Drug Identification Bible*, p. 881 (Amera-Chem, Inc. 2014 / 2015).  The evidence indicates that Wolfe is no longer taking suboxone.

*Accord*, syl. pt. 3, *Lawyer Disciplinary Board v. Campbell*, 240 W.Va. 146, 807 S.E.2d 817 (2017).

Clearly, a suspension is warranted in view of Wolfe's violations of the Rules of Professional Conduct and to ensure that she is receiving the treatment and monitoring she needs before returning to the practice of law. Wolfe has disengaged from the practice of law, and her Monitoring Agreement with the Judicial and Lawyer Assistance Program extends to May 14, 2023. Under the circumstances of this case, we find the recommendations of the Hearing Panel Subcommittee reasonable and consistent with the admonition, expressed in *Walker*, to provide a deterrent to other members of the Bar and to restore public confidence in the ethical standards of the legal profession. We further find it reasonable to apply retroactivity to the recommended suspension of one year and six months, in accord with *Alderman* and *Hanna*.

## IV. Conclusion

This Court confirms the findings and conclusions in the report of the Hearing Panel Subcommittee, and we adopt the Subcommittee's recommendations. Therefore, as a result of Wolfe's violations of Rules 8.4.(b) and 8.4.(c) of the Rules of Professional Conduct, this Court orders the following sanctions regarding Wolfe's license to practice law:

16

a. That Wolfe's law license be suspended for a period of one year and six months;
b. That Wolfe shall participate in the evaluation and treatment protocol as established by the West Virginia Judicial and Lawyer Assistance Program;
c. That Wolfe must comply with the mandates of Rule 3.28. of the Rules of Lawyer Disciplinary Procedure; and
d. That Wolfe shall pay the costs of these proceedings pursuant to Rule 3.15. of the Rules of Lawyer Disciplinary Procedure.

The one year and six month suspension of Wolfe's license to practice law shall be retroactive to October 22, 2018, the date Wolfe formally disengaged from the active practice of law.

Law License Suspended and Other Sanctions.