IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

Nos. 16-0181 & 16-0614

_____

FILED

June 15, 2017

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

KEVIN C. DUFFY,
a suspended member of The West Virginia State Bar,
Respondent

_____

Lawyer Disciplinary Proceeding
Nos. 16-0181 & 16-0614

LAW LICENSE SUSPENDED AND OTHER SANCTIONS

_____

Submitted: April 18, 2017
Filed: June 15, 2017

Renée V. Frymyer, Esq.                  Kevin C. Duffy
Lawyer Disciplinary Counsel             Pro Se
Office of Disciplinary Counsel          Clay, West Virginia
Charleston, West Virginia               Counsel for the Respondent
Counsel for the Petitioner

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus Point 3, *Committee on Legal Ethics v. McCorkle,* 192 W. Va. 286, 452 S.E.2d 377 (1994).

2.    "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syllabus Point 3*, Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

3.    "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession."  Syllabus Point 3*, Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

4. "'Rule 3.7 of the Rules of Lawyer Disciplinary Procedure, effective July 1, 1994, requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence.' Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995)." Syllabus Point 3, *Lawyer Disciplinary Bd. v. Nessel*, 234 W. Va. 695, 769 S.E.2d 484 (2015).

5. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus Point 4, *Office of Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

6. "In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the [Lawyer Disciplinary Board] initiates proceedings before this Court, it has a duty to advise this Court of all

ii

pertinent facts with reference to the charges and the recommended disciplinary action." Syllabus Point 2, *Committee on Legal Ethics of the West Virginia State Bar v. Mullins*, 159 W. Va. 647, 226 S.E.2d 427 (1976), overruled on other grounds by *Committee on Legal Ethics v. Cometti*, 189 W. Va. 262, 430 S.E.2d 320 (1993).

7.      "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed."  Syllabus Point 2, *Lawyer Disciplinary Bd. v. Scott,* 213 W. Va. 209, 579 S.E.2d 550 (2003).

8.      "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus Point 3, *Lawyer Disciplinary Bd. v. Scott,* 213 W. Va. 209, 579 S.E.2d 550 (2003).

9. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Bd. v. Scott,* 213 W. Va. 209, 579 S.E.2d 550 (2003).

Walker, Justice:

This lawyer disciplinary proceeding arises from charges filed by the Petitioner, the Lawyer Disciplinary Board ("Board") against the Respondent, Kevin C. Duffy ("Mr. Duffy"), a lawyer currently suspended, pursuant to two consolidated statements of charges. The charges relate to Mr. Duffy's representation of clients in sexual assault and sexual abuse and child abuse and neglect proceedings, unprofessional and inappropriate interaction with persons involved in his lengthy and contentious divorce proceedings, and misdemeanor theft and drunken driving charges in Ohio.

The Board's Hearing Panel Subcommittee ("HPS") recommended that this Court adopt the jointly proposed findings of fact and conclusions of law by the Office of Disciplinary Counsel ("ODC") and Mr. Duffy as to the numerous violations of the West Virginia Rules of Professional Conduct, which will be discussed in detail below. The HPS also recommended adoption of the jointly proposed recommendations as to discipline with two modifications. The jointly proposed sanctions included 1) a three-month suspension served retroactively from the date of Mr. Duffy's current temporary suspension, 2) an automatic reinstatement followed by two years of supervised practice,

1

3) regular attendance at 12-step program[1] meetings with written proof provided to the ODC, and 4) payment of costs.

The HPS's suggested modifications to the joint recommendations were that Mr. Duffy be required to apply for reinstatement and that the ODC and Mr. Duffy work with the West Virginia Lawyer Assistance Program ("LAP") to develop a detailed plan and accountability schedule so that he may receive the full spectrum of support, which the HPS concluded he needed to avoid recidivism.

The ODC filed a consent letter with this Court agreeing to the suggested modifications to the joint recommendations as to discipline. Mr. Duffy did not file an objection. In our order dated January 4, 2017, we notified the parties that the Court did not concur with the recommendations of the HPS and scheduled the matters for oral argument.

Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, this Court finds that there is clear and convincing evidence to support the HPS's recommendations regarding the violations of the West

---

[1] Most generally used in treatment programs such as Alcoholics Anonymous and Narcotics Anonymous, Twelve-Step Programs are a commonly recommended treatment modality that outlines a course of action for coping with alcohol and drug addiction as well as other behavioral issues.

Virginia Rules of Professional Conduct. We concur with the recommended sanctions of 1) petition for reinstatement, 2) referral to the LAP and 3) payments of costs. However, for the reasons explained below, we suspend Mr. Duffy's license to practice law for twelve months retroactively to June 2, 2016, the date of Mr. Duffy's temporary suspension pursuant to this Court's order in *ODC v. Duffy*, 237 W. Va. 295, 787 S.E.2d 566 (2016).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Mr. Duffy is a suspended lawyer who practices in Clay County, West Virginia. Mr. Duffy was admitted to the West Virginia State Bar on November 20, 1996. The matters before us involve two disciplinary proceedings that have been consolidated for purposes of disposition.

### A.    *Matter No. 16-0181*

Count I relates to Mr. Duffy's representation of Charles R. Emerson who was convicted of first-degree sexual assault and first-degree sexual abuse. Mr. Duffy appealed his client's convictions, which this Court affirmed in *State v. Emerson*, No. 13-0571, 2014 WL 1672953 (W. Va. April 25, 2014) (memorandum decision). Thereafter, Mr. Emerson filed a complaint with the ODC alleging that Mr. Duffy failed to forward his case file so that he could petition for a writ of habeas corpus. In response to the complaint, the ODC directed Mr. Duffy by letter dated August 28, 2014, to provide a

3

copy of the complete file to Mr. Emerson within twenty days and to provide the ODC with verification that he had complied with the directive. Nearly one month later, Mr. Emerson again notified the ODC that he never received his file. Mr. Duffy also never provided the ODC with verification that he had followed through with its directive of August 28, 2014.

The ODC opened the complaint and sent Mr. Duffy a letter dated October 15, 2014, providing him with a copy of Mr. Emerson's complaint and requesting a response within twenty days. Again, Mr. Duffy did not respond. On December 18, 2014, the ODC sent another letter, this time sent certified mail with return receipt requested, directing Mr. Duffy to file a response by January 5, 2015, and advising him that failing to do so could result in the ODC issuing a subpoena requiring Mr. Duffy to appear for a sworn statement. Mr. Duffy signed for the certified letter on December 23, 2014.

Once again, Mr. Duffy did not file a verified response to the complaint of Mr. Emerson. Therefore, the ODC issued a subpoena on March 4, 2015, for Mr. Duffy to appear on April 21, 2015 to give a sworn statement. Mr. Duffy appeared and provided a verified, written response to Mr. Emerson's complaint, over five months past its original due date, explaining that he had provided a copy of the complete file to Mr. Emerson's current counsel and that Mr. Emerson instructed numerous times that while he was incarcerated, Mr. Duffy was not to send him any items related to his conviction out of

fear for his safety. Mr. Duffy also stated that the handwriting in the complaint was not Mr. Emerson's handwriting.

When asked why he did not just file a verified response to the October 15, 2014, letter, Mr. Duffy answered under oath, "I just can't stand your office and [I was] just being obnoxious to you. That's my reason." Mr. Duffy explained that he was angry that his malpractice insurance had increased because of other pending ethics complaints docketed by the ODC that he felt were frivolous. With respect to resolution of the complaint, Mr. Emerson later admitted that his current attorney had his case file and that, at one point, he had instructed Mr. Duffy not to send his case file to him in prison.

However, because of his repeated failure to respond to numerous lawful requests for information by the ODC, the Investigative Panel ("IP") charged Mr. Duffy with violating Rule 8.1(b)[2] of the West Virginia Rules of Professional Conduct.

Count II arises from Mr. Duffy's representation of Glen W. Tanner in a child abuse and neglect case that resulted in the termination of Mr. Tanner's parental

---

[2] Rule 8.1(b) provides "[a] lawyer in connection with . . . a disciplinary matter shall not . . . knowingly fail to respond to a lawful demand for information from . . . disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."

5

rights in July 2014. After the appeal period passed, Mr. Tanner filed a complaint on October 9, 2014, alleging that Mr. Duffy failed to appeal the decision to terminate his parental rights as Mr. Tanner requested.

Exhibiting the same pattern of conduct as in the complaint of Mr. Emerson, Mr. Duffy received a letter from the ODC directing him to contact Mr. Tanner and provide a detailed update as to the status of his case within ten days and then follow up with written verification to the ODC that he had complied with the directive. On November 12, 2014, Mr. Tanner complained that he had not had any further contact with Mr. Duffy. Similarly, the ODC had not received verification from Mr. Duffy that he had complied with its directive. The ODC opened a complaint, and on December 12, 2014, the ODC sent a letter to Mr. Duffy with a copy of Mr. Tanner's complaint and asked him to file a response within twenty days. Mr. Duffy did not respond.

The ODC sent a second letter on January 15, 2015, this time sent certified mail with return receipt requested, advising Mr. Duffy to file a response within seven days or receive a subpoena to appear in person and give a sworn statement. Mr. Duffy signed for the certified letter on January 22, 2015. However, he did not file a response to the complaint. As in the Emerson complaint, the ODC issued the subpoena commanding Mr. Duffy to appear on April 21, 2015. In his sworn statement, Mr. Duffy said he failed to respond because he thought he was getting information about a different complaint,

6

and he did not read the correspondence from the ODC. As he had previously stated, "I just can't stand your office and [I was] just being obnoxious to you," when asked to explain his failure to respond.

Mr. Duffy defended his representation of Mr. Tanner asserting that Mr. Tanner lost his parental rights because of his own failure to pass multiple drug screens, his repeated failure to attend hearings, and his prior criminal convictions for manslaughter, grand larceny and multiple misdemeanors. Mr. Duffy did not believe there was any good faith basis for an appeal, but he did not communicate that to Mr. Tanner and did not attempt to withdraw as counsel. Moreover, he did not seek informal advice from the ODC regarding his obligation to file an appeal on behalf of a client in an abuse and neglect matter.

The IP charged Mr. Duffy with four violations of the West Virginia Rules of Professional Conduct[3] as a result of this complaint. The first was a violation of Rule 1.2(a) (scope of representation)[4] because Mr. Duffy failed to abide by Mr. Tanner's

---

[3] The Rules of Professional Conduct were amended and took effect in January 2015. All references herein to the Rules of Professional Conduct are made to those in effect at the time of the violation.

[4] Rule 1.2(a) provides "[a] lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by

(continued . . .)

decisions concerning the objectives of the representations relating to filing the appeal that raised arguable points of error. Second, the IP charged Mr. Duffy with a violation of Rule 1.3(diligence)[5] because he failed to file the appeal on behalf of Mr. Tanner or withdraw as his lawyer. The third violation was of Rule 1.4 (communication)[6] because Mr. Duffy failed to respond to Mr. Tanner's requests for information and failed to explain to Mr. Tanner the reason that he did not file Mr. Tanner's appeal. Fourth, the IP charged that Mr. Duffy violated Rule 8.1(b)[7] for failing to respond to the ODC's lawful request for information.[8]

---

a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify."

[5] Rule 1.3 provides "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[6] Rule 1.4 provides:

"(a)  A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b)  A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[7] *See supra*, n.2.

[8] This disciplinary matter originally included four counts in the Statement of Charges filed on February 22, 2016. In its "Stipulations Regarding Findings of Fact, Conclusions of Law and Recommendation as to Discipline," the ODC declined to pursue the violations as charged in Counts III and IV. Both of these counts related to complaints of vulgar and inappropriate telephone calls and emails in 2015 with health care professionals involved in Mr. Duffy's lengthy and contentious divorce proceeding.

8

**B.      *Matter No. 16-0614.***

Mr. Duffy was arrested for theft and driving under the influence of alcohol or drugs in the state of Ohio on February 5, 2016. On that day, he attempted to purchase beer at a convenience store, but the clerk refused to let him make the purchase. Rather than leave, he took the beer and other merchandise and drove off. The convenience store employee called the police and reported the theft by an intoxicated man. The police stopped Mr. Duffy at a traffic light down the road and identified him as the person reported by the convenience store employee. The police took Mr. Duffy to the hospital and released him on his own recognizance for medical treatment. However, the police issued him a citation that included a summons to appear in municipal court for a hearing on February 9, 2016. The summons also included an order suspending Mr. Duffy's right to drive. When Mr. Duffy failed to appear, a C*apias* with Bond Order was issued on February 11, 2016, commanding any police official or sheriff to immediately take Mr. Duffy to answer for the charges against him. The next day, Mr. Duffy voluntarily appeared in the municipal court. He pled guilty to the misdemeanor offenses of operating a vehicle while intoxicated and disorderly conduct. As a result, Mr. Duffy was fined, sentenced to one year of probation and assessed court costs.

In a letter dated February 17, 2016, Circuit Judge Alsop reported to the ODC that Mr. Duffy represented two clients in separate felony cases in Clay County and

that between January 19, 2016, and February 8, 2016, he failed to appear for every hearing, seven in total, scheduled in those two cases. Judge Alsop also reported that Mr. Duffy initially said he failed to appear because he was ill, and then later said that his vehicle had broken down. Mr. Duffy failed to mention to Judge Alsop that he was arrested on February 5, 2016, for theft and driving under the influence of alcohol and that he failed to appear before the municipal court on February 9, 2016 in violation of a lawfully issued summons. Judge Alsop subsequently removed Mr. Duffy from these two felony cases. Further, on March 1, 2016, Judge Alsop entered an Order Removing Attorney From Appointed Counsel Panel, which removed Mr. Duffy from the approved list of court-appointed panel counsel for indigent defendants until further order of the court.

The ODC then filed a petition pursuant to Rule 3.27 of the West Virginia Rules of Disciplinary Procedure. In its petition, the ODC alleged that Mr. Duffy's unethical conduct posed a substantial threat of irreparable harm to the public. After a hearing, this Court suspended Mr. Duffy's license pending the outcome of formal charges.

Based upon the delay of the felony cases in Clay County and the criminal behavior in Ohio, the IP charged Mr. Duffy with the violation of five of the West

Virginia Rules of Professional Conduct.  They include Rule 1.1 (competence),[9] Rule 1.3 (diligence),[10] Rule 3.2 (expediting litigation),[11] Rule 8.4(b) (criminal act),[12] and Rule 8.4(d) (prejudice to administration of justice).[13]  The ODC declined to pursue a charge that Mr. Duffy violated Rule 8.4(c) (dishonesty).

### C.    HPS Hearing

The HPS held a hearing on the charges in the consolidated matters on August 30, 2016.  Mr. Duffy was the only witness who testified.  The ODC and Mr. Duffy submitted a Joint Exhibit entitled "Stipulations Regarding Findings of Fact, Conclusions of Law[14] and Recommendation as to Discipline," ("Joint Stipulations")

---

[9] Rule 1.1 provides "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[10] *See supra,* n.5.

[11] Rule 3.2 provides "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

[12] Rule 8.4(b) provides "[i]t is professional misconduct for a lawyer to: . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects [.]"

[13] Rule 8.4(d) provides "[i]t is professional misconduct for a lawyer to: . . . engage in conduct that is prejudicial to the administration of justice."

[14] The findings of fact and conclusions of law recite the factual allegations and the violations of the rules set forth in the Statement of Charges for the consolidated matters.

which the HPS admitted into evidence without objection. Specifically, the joint recommendations as to discipline were:

> 1) That Mr. Duffy's law license be suspended for a period of three months, served retroactively based upon the Supreme Court's Order of June 2, 2016, which immediately suspended Mr. Duffy's license to practice law pending the outcome of formal disciplinary charges;
>
> 2) That upon automatic reinstatement pursuant to 3.31 of the Rules of Lawyer Disciplinary Procedure, Mr. Duffy's practice be supervised for a period of two years by an attorney agreed upon by the ODC and Mr. Duffy;
>
> 3) That Mr. Duffy be required to regularly attend twelve-step program meetings and provide the ODC with proof of the attendance in writing; and
>
> 4) That Mr. Duffy be required to pay the costs of the disciplinary proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

On October 31, 2016, the Board filed its recommendations to this Court as set forth in the "Report of the Hearing Panel Subcommittee" ("Report"). In the Report, the HPS adopted the findings of fact and conclusions of law in the Joint Stipulation without modification. Thus, the HPS recommended that this Court also adopt the facts relating to the complaints and the criminal conduct of Mr. Duffy and the conclusions regarding the resulting violations of the West Virginia Rules of Professional Conduct.

12

The HPS undertook a review of Mr. Duffy's misconduct pursuant to Rule 3.16 of the Rules of Lawyer Disciplinary Procedure and concluded that Mr. Duffy had breached a duty to clients, the public, the legal system, and the profession by virtue of his conduct and had acted intentionally and knowingly in doing so. Further, the HPS found that his misconduct caused harm to his clients due to his lack of diligent representation and also to the legal system in relation to his lack of cooperation with the ODC. Likewise, the HPS identified the following mitigating factors: (1) absence of a dishonest or selfish motive; (2) personal or emotional problems connected to Respondent's divorce; (3) full and free disclosure to disciplinary board; (4) interim rehabilitation by way of outpatient therapy and alcohol education classes; and (5) remorse. On the other hand, the HPS also noted that his prior discipline as recently as October 26, 2013 under Rules 1.3 and 1.4 of the Rules of Professional Conduct was an aggravating factor.

After considering the mitigating and aggravating factors and reviewing the joint stipulations regarding the recommendation as to discipline, the HPS suggested two modifications. The HPS suggested that Mr. Duffy seek reinstatement of his license pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure instead of automatic reinstatement since his temporary suspension had already exceeded the three-month maximum suspension permitted for automatic reinstatement under Rule 3.31 of those rules. Next, the HPS suggested that Mr. Duffy be referred to the LAP since the availability of 12-step meetings or other services in his rural county was very limited.

The HPS felt strongly that Mr. Duffy could benefit from working with the LAP to "develop a detailed plan and accountability schedule so [Mr. Duffy] can receive the full spectrum of support which we think he clearly needs to avoid recidivism." The HPS acknowledged that this suggestion is broader than what the ODC recommended but noted that it "consider[ed] it necessary for [Mr. Duffy] in continuing to deal with his family and child custody issues, his practice and with the public."

Although the ODC filed its consent to the modifications by letter dated November 4, 2016, and Mr. Duffy did not file an objection to the Report, this Court does not concur with all recommendations made by the HPS. We will address our objections to the recommendations in turn.

## II.  STANDARD OF REVIEW

We review the recommendations of the HPS in lawyer disciplinary proceedings under the following standards:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Committee on Legal Ethics v. McCorkle,* 192 W. Va. 286, 452 S.E.2d 377 (1994).

With respect to any disciplinary action to be taken for violations of the West Virginia Rules of Professional Conduct, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3*, Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

In exercising this authority, we remain aware that "this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. Pt. 3*, Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987). Mindful of these standards, we turn to the case before us.

### III. DISCUSSION

"'Rule 3.7 of the Rules of Lawyer Disciplinary Procedure, effective July 1, 1994, requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence.' Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v.*

*McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995)." Syl. Pt. 3, *Lawyer Disciplinary Bd.*
*v. Nessel*, 234 W. Va. 695, 769 S.E.2d 484 (2015).

In this case, this standard is easily met because Mr. Duffy does not contest
that he violated the provisions as found by the HPS. He acknowledges that the findings
of fact and conclusions of law are correct, sound, and fully supported by reliable,
probative and substantial evidence and has accepted the HPS recommendations.[15] We
have discussed that "[i]n the absence of arguments contrary to the HPS's findings, this
Court will not disturb the underlying determination that [the attorney] violated various
provisions of the West Virginia Rules of Professional Conduct." *Lawyer Disciplinary Bd.*
*v. Conner*, 234 W. Va. 648, 655, 769 S.E.2d 25, 33 (2015); *Lawyer Disciplinary Bd. v.*
*Cunningham,* 195 W. Va. 27, 34–35, 464 S.E.2d 181, 188–89 (1995) ("The burden is on
the attorney at law to show that the factual findings are not supported by reliable,
probative, and substantial evidence on the whole adjudicatory record made before the
Board.") (internal citation omitted). Thus, our analysis is limited to the propriety of the
recommended sanctions.

*A.  Suspension of Mr. Duffy's License to Practice Law*

---

[15] Mr. Duffy does, however, contest the HPS recommendation that he be required
to apply for reinstatement.

The HPS recommended that Mr. Duffy's license be suspended for a period of three months, to be applied retroactively to include his period of suspension from the date of our order temporarily suspending his license pursuant to Rule 3.27 of the Rules of Lawyer Disciplinary Procedure. In determining whether a particular sanction is appropriately tailored to an attorney's misconduct, we rely upon Syllabus Point 4 of *Office of Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998):

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. Pt. 4, *Jordan*. Our analysis of these factors is grounded in the notion that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics v. Keenan,* 192 W. Va. 90, 94, 450 S.E.2d 787, 791 (1994). This Court considers these factors on a case-by-case basis in determining appropriate sanctions:

17

> In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the [Lawyer Disciplinary Board] initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.

Syl. Pt. 2, *Committee on Legal Ethics of the West Virginia State Bar v. Mullins*, 159 W. Va. 647, 226 S.E.2d 427, 428 (1976), overruled on other grounds by *Committee on Legal Ethics v. Cometti*, 189 W. Va. 262, 430 S.E.2d 320 (1993).

After a thorough review of the record, we find that Mr. Duffy's conduct, considered under the *Jordan* factors, warrants a suspension of twelve months rather than three months as recommended by the HPS. Relating to the first *Jordan* factor, Mr. Duffy stipulated that he had breached duties owed to his clients, to the public, and to the legal profession. He owed his clients duties of diligence, communication and loyalty, and breached those duties by failing to promptly address a client's right to appeal and by failing to attend his clients' hearings. Mr. Duffy likewise breached duties owed to the public and to the legal profession by engaging in criminal conduct and in his refusal to cooperate with the ODC. Second, the parties stipulated that Mr. Duffy's conduct was knowing and intentional – the most culpable mental states. *See In re Hernandez*, 46 So.3d 1244 (La. 2010) (stating attorney knowingly and intentionally violated duties owed to public, legal system, and legal profession by failing to appear in court on several occasions and failing to cooperate with ODC). Third, we find there is ample basis to

18

support the ODC's finding that Mr. Duffy's conduct caused harm. Mr. Duffy adversely affected his clients by failing to attend hearings on their behalf and failing to respond to his client relating to an appeal. Likewise, Mr. Duffy's conduct toward the ODC and his criminal conduct are harmful to the public and to the legal profession. *See In re Baer*, 21 So.3d 941, 943 (La. 2009) (recognizing "serious harm results when members of the legal profession engage in criminal acts, which give rise to a lack of confidence by members of the public in those who are officers of the court.").

Regarding the fourth *Jordan* factor, we have explained that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Board v. Scott,* 213 W. Va. 209, 579 S.E.2d 550 (2003). We have expounded on relevant mitigating factors as follows:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

19

*Id.* at Syl. Pt. 3.[16]   On the other hand, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." *Id.* at Syl. Pt. 4.

The HPS and the parties concurred that the following mitigating factors were present: (1) absence of a dishonest or selfish motive; (2) personal or emotional problems connected to Respondent's divorce; (3) full and free disclosure to disciplinary board; (4) interim rehabilitation by way of outpatient therapy and alcohol education classes; and (5) remorse.  We find that the ODC properly identified several mitigating factors, not the least of which is Mr. Duffy's willingness to participate in substance abuse treatment.

As to aggravating factors, the HPS acknowledged only that Mr. Duffy had previously been subject to prior discipline for violating Rules 1.3 and 1.4 of the Rules of Professional Conduct as recently as October 26, 2013.  However, we believe there are additional aggravating factors that warrant an increase in suspension from three months to twelve months.  We are particularly troubled by Mr. Duffy's statements relating to his

---

[16] These mitigating factors are not to the exclusion of others that may be present in a particular case. *Lawyer Disciplinary Bd. v. Scott,* 213 W. Va. at 214 n.33, 579 S.E.2d at 555 n.33.

20

disdain for the ODC as the source of his refusal to respond to disciplinary complaints. His conduct in this regard was intentional, knowing, and egregious. Further, his conduct relating to the ODC was harmful to the ODC's ability to meaningfully review and timely address complaints of clients. *See* Syl. Pt. 1, *Committee on Legal Ethics v. Martin*, 187 W. Va. 340, 419 S.E.2d 4 (1992) (attorney violates West Virginia Rule of Professional Conduct 8.1(b) by failing to respond to requests for information in connection with an investigation of an ethics complaint). As a self-regulated profession, lack of respect for the administration of our ethical rules and procedures is not to be taken lightly.

Likewise, we emphasize that Mr. Duffy engaged in serious criminal conduct. Failure to abide by the law epitomizes a lack of respect for the law and thereby diminishes public confidence in the legal profession. We acknowledge, however, that often such illegal conduct stems from alcohol, drug or other addictions. Where an attorney is committed to recovery from those addictions, the sanction levied may be moderated to reflect that commitment. *See In re Tribert*, 540 S.E.2d 467 (S.C. 2000) (noting attorney's commitment to sobriety and participation in substance abuse treatment program relevant to sanctions).

We find that a twelve-month suspension retroactive to the initial order of suspension entered on June 2, 2016 adequately accounts for the seriousness of Mr. Duffy's conduct while also taking into consideration the emotional turmoil of his divorce

21

and his alcohol addiction. We consider the facts and circumstances of each individual case rather than attempting to establish uniform disciplinary action. *See Lawyer Disciplinary Bd. v. Veneri*, 206 W. Va. 384, 524 S.E.2d 900 (1999). Still, a twelve-month suspension and the other recommended sanctions are consistent with our previous decisions in which attorneys engaged in illegal conduct, failed to adequately represent their clients or declined to cooperate with the ODC. *See Lawyer Disciplinary Bd. v. Sturm*, 237 W. Va. 115, 785 S.E.3d 821 (2016) (concurrent ninety-day suspensions and two-year period of supervisory practice for rule violations relating to failure to file an appeal and habeas petition on behalf of clients, and failure to comply with the ODC's requests for information); *Lawyer Disciplinary Bd. v. Conner*, 234 W. Va. 648, 769 S.E.2d 25 (2015) (ninety-day suspension and two-year period of supervisory practice for failure to communicate with clients, file an appeal or otherwise take action in cases, and to comply with the ODC's requests for information); *Office of Disciplinary Counsel v. Alderman*, 229 W. Va. 656, 734 S.E.2d 737 (2012) (one year retroactive suspension and one-year suspension held in abeyance pending two years of supervised practice for two misdemeanor criminal convictions relating to drug charges); *Lawyer Disciplinary Bd. v. Roberts*, 217 W. Va. 189, 617 S.E.2d 539 (2005); (public reprimand and supervised practice for two years stemming from misconduct in representing clients while undergoing medical treatment for pain); *Office of Lawyer Disciplinary Counsel v. Albers*, 214 W. Va. 11, 585 S.E.2d 11 (2003) (five-month suspension for assault, larceny, and harassment).

Based on the totality of the circumstances, we believe a twelve-month suspension served retroactively, in conjunction with the other sanctions discussed herein, will best ensure that Mr. Duffy's misconduct will not recur. We have previously permitted suspensions to be applied retroactively. In *Committee on Legal Ethics v. White*, 189 W. Va. 135, 428 S.E.2d 556 (1993), we discussed that retroactive application of a suspension may be appropriate in certain circumstances because it "accounts for both the seriousness of [the] crimes . . . and the mitigating facts and circumstances of . . . later behavior." *White*, 189 W. Va. at 140, 428 S.E.2d at 561. Likewise, in *Office of Disciplinary Counsel v. Alderman*, 229 W. Va. 656, 734 S.E.2d 737 (2012), we permitted a suspension to apply retroactively where the attorney voluntarily ceased the practice of law and entered into an addiction program. Here, we find that Mr. Duffy has demonstrated a willingness to participate meaningfully in rehabilitation services and the time he has already served on suspension should be applied to the twelve-month suspension. Further, because we find that a twelve-month suspension is a more appropriate sanction under the circumstances, Mr. Duffy will be required to apply for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure; this rule requires a person whose license has been suspended for more than three months to petition the Court for reinstatement.

23

### B.     *Referral to the Lawyer Assistance Program*

The HPS recommended that Mr. Duffy work with the LAP to develop a detailed plan and accountability schedule so that he can receive the necessary support to avoid relapse and Mr. Duffy expressed his willingness to participate with the LAP. Use of this program furthers our goal of providing attorneys with personal and professional support to combat impairing addictions. Where professional misconduct arises from such addictions, utilization of the LAP promotes and monitors the attorney's recovery from drug and alcohol addictions and thereby serves to prevent recidivism.

Accordingly, Mr. Duffy will enter into a contractual agreement with the LAP detailing a plan for treatment and an accountability schedule as a means to reduce the risk of relapse. As part of this agreement, the ODC will periodically confirm with the LAP that Mr. Duffy is in compliance with his contractual agreement. Details relating to Mr. Duffy's treatment plan and progress will remain confidential pursuant to Rule 7 of the Rules of the West Virginia Lawyer Assistance Program[17] unless and until he petitions for reinstatement, at which time such information may be filed under seal for the sole purpose of considering his petition.[18] *See In re Alexander*, 984 So.2d (La. 2008)

---

[17] We note that this Court has proposed revisions to the rules governing the Lawyer Assistance Program. The proposed rule revisions opened for public comment to conclude on May 11, 2017, but are not yet effective as of the date of this Opinion.

[18] Rule 10(b) of the Rules of the Lawyer Assistance Program provides:

(continued . . .)

(suspending attorney from practice of law for one year and one day and directing attorney to execute a five-year recovery agreement with LAP); *Bd. of Professional Responsibility v. Love*, 256 S.W.3d 644 (Tenn. 2008) (re-instating suspended attorney's five-year contract with LAP); *Disciplinary Counsel v. Ault*, 852 N.E.2d 727 (Ohio 2006) (suspending attorney from practice of law for twelve months stayed on condition that he complete a contract with LAP).

## IV. CONCLUSION

This Court has conducted a thorough review of the record and concludes that the findings of fact and conclusion of law of the HPS are supported by reliable, probative, and substantial evidence. For those reasons, we adopt the recommendations of the HPS with the exception that Mr. Duffy be suspended for twelve months, rather than the recommended three-month suspension. Accordingly, this Court orders the following: (1) Mr. Duffy is suspended from the practice of law for twelve months, to be served retroactively based upon this Court's June 2, 2016 order; (2) Mr. Duffy will be required

Any diversion or other program which requires involvement of WVLAP in rehabilitative efforts on the part of the lawyer that is a result of an agreement with the Office of Disciplinary Counsel or otherwise imposed by order of the Supreme Court of Appeals, shall govern the extent and scope of confidentiality which may be asserted by the lawyer. To the extent such agreement and/or order may require WVLAP to violate a confidentiality protection granted under these rules, the order or agreement shall control and any disclosure made pursuant thereto shall not be deemed a breach of confidentiality otherwise imposed by these rules.

25

to apply for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure; (3) if reinstated, Mr. Duffy's practice will be supervised for a period of two years by an attorney agreed upon by the ODC and Mr. Duffy; (4) Mr. Duffy will immediately enter into a contractual agreement with the LAP; and (5) Mr. Duffy will be required to reimburse the Lawyer Disciplinary Board the costs of this disciplinary proceeding pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law license suspended and other sanctions imposed.